Sandra Diaz versus the Commissioner of Social Security and Mr. Duncan if you would just hold up one minute till we can be sure we have Ms. Kuchick on zoom and it looks like she's there can you hear me counsel yes I can hear you all right great thank you then we can begin thank you Duncan good morning your of Sandra Renee Diaz the history of this case would probably take up most of my allotted time but the key issue in this is the only issue before the court which is whether the administrative law judge Judge Parker and while I usually use a generic ALJ considering she's the fourth ALJ to be involved in this case I will decision of March 9th 2021 whether she adequately weighed the opinion of dr. Manos now this case falls under the old rule the old the new medical opinion rule was established effective March 27th of 2017 so that's how old this thing is this goes back to the original rule which was step one was if it was a treating physician controlling weight and then the second part of this which is under because this is an SSI case 20 CFR 416 point nine two seven sub C sub one which is significant weight to be afforded to an examining physician dr. Manos found two significant things one she was intolerant of routine work and stress and to she had marked interactions with supervisors and co-workers as Diaz testified at hearing about stress and her difficulty in dealing with co-workers having situations where she indicated she would probably walk off the job if criticized by a supervisor she also had a diagnosis of borderline personality disorder which is by itself a condition that seems to trigger such responses that are not normally acceptable within a work environment so let me let me ask you this we we've narrowed this case down if it's possible to say that to to this closed period because she is getting her I understood the administrative law judge to be weighing dr. Manos's opinions which have you know are pretty serious opinions as against her responsiveness to treatment when she was able to stay on treatment at the time yes and I'm concerned about how much we're supposed to reweigh this your basic point seems to be what one that I'm actually fairly sympathetic to which is when you're dealing with mental illness the inputs that the trained psychologist or the trained whoever it is are going to be using are her accounts of what she's experiencing so it's a little hard to criticize the subjective inputs but it is possible to say you know is she really this limited if she's able to respond during that closed period of time that we're talking about to treatment well this is a fundamental point this is one that magistrate Jeff or just judge Duffin said in his first decision which is yes you've established and she has improvement in her bipolar but you've not established that she still would not have significant problems dealing with routine work stress the two do not go hand-in-hand implied that you really should have gotten a medical opinion on that fact I mean after all dr. Manos was brought into this case because of a lack of any significant mental records and that's why he was brought in right and he only examines her once though right he is an examining physician but only once correct and what I can do and I would when I was reviewing in preparation today I forgot to look at a thing called the Green Book which Social Security publishes which is the instructive manual for consultative examiners and I will provide the citation to that as a supplemental after oral argument but he complied with the Green Book which says you are basing your decision when we order one it's because there's a lack of evidence so then turning around and saying well there it's not supported because there isn't enough evidence in the file to opinion is begging the question because that's why the judge or why the consultative exam was ordered the second part of that is it specifically outlines that you're supposed to have a mental status examination and observations which are the key components of your opinion okay so that's what he did and then to say that it's just subjective statements does not again provide any justifiable situation forgive me mr. Duncan yes how do we deal with this situation in October of 2010 mrs. Diaz told dr. menace that she had stopped treatment and run out of medications in the spring because she had lost health insurance and her psychiatric symptoms were back and she was depressed but in primary care physician that her bipolar disorder was well controlled correct how do we deal with that it's very it's very simple your honor what we have here are multiple medical conditions we have nothing in the record that says any medication she was taking could have dealt with her a borderline personality disorder which is part of the whole basis and a key portion of why she cannot deal with work stress and why she has difficulty interacting with co-workers and supervisors and that point right there which is why in my brief and support I outlined in detail the findings associated with the DSM 5 as a medical doctor and I know the court probably is not either that's the problem we have in this case and when we've had this going on for this long and we've already ordered consultive examinations we had an ME who never was brought in by judge Messina to testify but never asked to opine on specifics about stress or interaction I mean it just begs why wasn't this addressed and the only reason I can come up with is because the ALJs didn't want the answer because you know it's we're talking about four different ALJs and I believe five decisions and the they wanted to uphold what was going on which is a Mr. Duncan why couldn't the ALJ reasonably infer that if she's able to cooperate with her medical providers she can also cooperate with prospective co-workers and supervisors because in a treatment situation it's a different situation completely than when you're in a work environment dealing with supervisors who are criticizing you you're not or correcting I cited the Morales decision from the Third Circuit where they specifically said the treatment is much different than being in a work environment this court has said on repeated times that daily activities have to be taken into account versus outside versus inside a work environment and I think that's the biggest problem with this is is that we just don't have enough here to say that her treatment or being cooperative with treatment providers was going to show that she had ability to deal with supervisors I mean it's unrefuted testimony and she said if she was criticized she would walk off the job that's in the area of record 1982 to 86 where she testifies to those in and of itself the judge provided reasons okay I dispute as to the validity of some of those reasons but there there are problems with those reasons and take it into account that you're supposed to give greater weight to a source who is actually examining the claimant there's just not enough evidence here to justify the discounting of dr. Manos on this record so I am out of time and I will rest that this argument in my briefs thank you miss is it Kuznick yeah okay you may proceed may please the court my name is Jane Kuznick and I represent the acting commissioner of the Social Security Administration before diving into my argument I like to address just a couple points the doctor mr. Duncan made first miss Diaz does not have a diagnosis of borderline personality disorder I think dr. Manos and maybe in one other provider suggested it possible she had it but it was never a diagnosed impairment if it's not a medically determinable impairment ALJs cannot consider it but what's the line you're drawing there between a number of people do talk about borderline personality disorder so you're you're looking for a piece of paper or a statement I have decided you know ms. Diaz has borderline personality disorder period I mean it's pretty clear in the record that they think that's a problem it is suspected but I was it it's not really relevant what her diagnoses are because as long as she has a medically determinable impairment that could cause her alleged symptoms ALJs go on to consider the effect of those symptoms so regardless of displaying lots of symptoms of borderline personality disorder at the point at the stage you're talking about would be enough you know the ALJ would take that into account the symptoms yes and so the ALJ would assess what the record says about how she's functioning regardless of what what's causing the symptoms and another point I just like to address them mr. Duncan made about the medical expert in 2018 she did address dr. Manos his opinion at page 992 of the record she stated that she disagreed with dr. Manos his opinion because it was based on subjective allegations that were not corroborated but you see that's that's that's gobbledygook when it comes to a psychiatrist or psychologist mr. Manos was a psychologist first of all he's reporting visible things tearfulness distress irritability I don't know how any psychologist is supposed to evaluate objectively whether someone's hearing voices it seems to me that's a self report inherently you can't get into their head and you have quite a bit of evidence about her daily activities which are largely done by her daughter I mean there's a lot of external evidence that corroborates what this psychologist is seeing in this person you wouldn't say that bipolar disorder is diagnosable would you know she certainly has medically determinable and mental impairments that's not in dispute the dispute is whether the ALJ reasonably evaluated dr. Manos his pain and she did she followed the regulations by reviewing all of the evidence most of which dr. Manos did not see and she explained over three and a half pages why she determined that the evidence in this case did not support his opinion and some of it was inconsistent with his opinion well that's right we're evaluating that but I mean she she does need to engage with what dr. Manos thought the impairments were and then it's the ALJ's job to say okay given this set of impairments what can you do yes and she did she evaluated the subjective allegations that dr. Manos relied on so she determined the opinion well let me back up um miss Diaz's response or argument basically boils down to a demand that ALJ's give blind deference to consultative examiners however that's not what the law says the law it is a pretty extraordinary situation isn't it when an agency is seeking to discount the opinion of its own expert. Consultative examiners are independent examiners who evaluate claimants on one time. I think judge Rovner's point is that they are not for example a treating physician who may have developed a long-term relationship with a patient who might want to be helping they're just people who come in from the outside solicited by the agency and perform an examination and report back. Yes they issue an opinion but the law requires ALJ's to critically assess medical opinions and not just accept them blindly and that's what the ALJ did here she found the opinion was unsupported. Miss Diaz argues it was supported because she relied on subjective allegations and subjective allegations are certainly an important piece of evidence but it's only one category of evidence that ALJ's are tasked with considering. Just with like with medically or excuse me justice with medical opinions ALJ's are tasked with critically assessing subjective allegations. Is it consistent with the record and the ALJ reasonably concluded here that it was not. Dr. Manos rested his opinion on subjective allegations however. But what other allegations would support this diagnosis? It sounds to me like the Commissioner is saying this is just not a basis for Social Security benefits period let's stop talking about mental illness. Well no the record thoroughly reviewed her mental illness she the ALJ noted that subjective allegations were not a reasonable a reliable foundation for Dr. Manos opinion in this case because the subjective allegations she presented to Dr. Manos were inconsistent with the subjective allegations she gave to treating providers at the same time. In July 2010 she started treating with primary care provider Dr. Winner. Dr. Diaz was taking her medication that her bipolar symptoms were controlled and she saw Dr. Winner seven times between July 2010 and January 2011 and at no point during that period did that did Miss Diaz ever report having any problems with mental health. And yet in the middle of this period when she was treating with Dr. Winners and not telling Dr. Winners about any of her symptoms she came in and in October 2010 told Dr. Manos something very different. She said that our mental health symptoms were so bad that she was hardly functioning during the day that she was sleeping that she was spending her time staring out the window that she was having thoughts of cutting herself. But the ALJ reasonably determined that if that was the case if her subjective allegations were that bad she would have at least told her treating provider about that because her treating provider was the one physician who could help her not Dr. Manos. Does anybody ask her why she didn't? I mean you know it seems to me you know if I go see you know a neurologist I might not be discussing gynecological problems with with the neurologist. You know people are seeking out there from the right specialist. Yes they had a discussion at several of her hearings. As she testified the evidence was inconsistent with when she did or did not have her medications available. She told Dr. Manos that she had stopped taking that medication in April 2010 because of a loss of insurance and the ALJ acknowledged that. However in July 2010 we have Dr. Winners notes indicating she was still taking her medication at that point. And in January 2013 she testified that she had taken her medication. Did he specify what medication and how much of it or just taking medication? She consistently told Dr. Ice, her treating psychiatrist from 2006 to 2010 that she did well on Lamictal, Giudin, Seroquel, I think Welbutrin. And most of the time as long as she was taking that But even then she's having faint you know these hallucinations, faint auditory hallucinations. It's an odd thing but people seem to be able to be able to get used to almost anything. But it's someone who hears voices. She reported that her hallucinations were controlled with medication and later she testified that even when she stopped taking that medication her hallucinations never returned. She was, even if we take at face value her subjective allegations that she presented to Dr. Manos, it only represents a very brief period of functioning. During this 10-year period of issue the vast majority of the time she had mental, she had insurance and access to mental health insurance, mental health treatment. So this was, this was a brief worsening that did not represent her typical functioning and the ALJ understood that. I see I'm about out of time so I will, if the court has no other questions, I will rest my brief. Thank you. Mr. Duncan you had used all your time but I'll give you some extra time if you have something briefly to say in rebuttal. Yes, thank you. I'll just make three very brief points. One is the the situation is is yes she improved but she also was not working and in control of her environment and activities. There's nothing to say that if she went back into the workforce as I think even Dr. Manos had indicated in his opinion that this was not likely to change. I mean if we didn't take, do not take such things into consideration we're going to have people yo-yoing off on and off benefits depending on whether they're forced to work or not. Second point that I would like to make is again the ALJ relied on these mental status examinations that were done with her general practitioner, with her foot doctor, etc. They're not to the same level that a mental health expert would. And finally one of the reasons that the ALJ cited was the lack of structured treatment which implies inpatient. And apparently and I've yet to find the regulation but I have a lot of administrative law judges who imply that on disability that's just not the case. You do not need to be a danger to yourself or others in order to qualify. The question is whether it impacts your ability to work and in this case it does. Thank you very much. Our thanks to both counsel. The case is taken under advisement.